STATE *v.* N. B. REVIS.

(Filed 21 September, 1960.)

**1. Homicide § 13—**

Evidence tending to show that defendant intentionally shot the deceased, inflicting fatal injury, raises the presumptions that the killing was unlawful and done with malice, constituting murder in the second degree, nothing else appearing, and the burden is then upon the defendant to satisfy the jury of matters in mitigation or justification.

**2. Homicide § 20:   Criminal Law § 101—**

Testimony of declarations of defendant, introduced by the State for the purpose of showing an intentional killing, also tended to show that defendant shot deceased in self-defense while defendant was within his own home. Defendant's testimony at the trial, as well as evidence for the State, tended to show that defendant shot the deceased while defendant was on the porch of his house and the deceased was in the yard. *Held:* Nonsuit was correctly denied, since the declarations introduced by the State tending to establish self-defense were contradicted as to the place and circumstances of the killing by the other evidence.

**3. Criminal Law § 156—**

Ordinarily, misstatements in the charge as to the evidence or the

contentions must be brought to the trial court's attention with request for correction before the case is submitted to the jury.

**4. Same: Criminal Law § 112—**

Where the testimony of defendant on cross-examination and on further cross-examination is elicited by the State solely for the purpose of impeaching defendant, and defendant does not base any contention upon the testimony thus elicited by the State, a charge of the court to the effect that the defendant offered the testimony thus elicited and made certain contentions thereon, which statements of contentions also contained erroneous recitation of defendant's testimony upon the cross-examinations, must be held for prejudicial error, notwithstanding the failure of defendant to bring the matter to the court's attention before the submission of the case to the jury.

APPEAL by defendant from *Hooks, Special Judge,* June (Conflict) Criminal Term, 1960, of BUNCOMBE.

Criminal prosecution on bill of indictment charging defendant with first degree murder of Wayne Wilson. Upon call of the case for trial, the solicitor announced that the State would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree or manslaughter as the evidence might justify.

On Friday, February 12, 1960, about 9:00 p.m., defendant, using his .22 rifle, shot Wayne Wilson, his son-in-law. The shooting occurred on defendant's premises. Defendant, Wilson and Edward Revis, defendant's brother, were the only persons on defendant's premises when the shooting occurred.

The jury returned a verdict of guilty of manslaughter. Thereupon, the court pronounced judgment that defendant be confined in the State's Prison for a term of not less than three nor more than five years, from which defendant appealed, assigning errors.

*Attorney General Bruton and Assistant Attorney General Mc-Galliard for the State.*

*Don C. Young for defendant, appellant.*

BOBBITT, J.   There was plenary evidence tending to support the finding that defendant intentionally shot the deceased and thereby proximately caused his death. Upon such finding, there arose the presumptions that the killing was (1) unlawful and (2) with malice; and, nothing else appearing, defendant would be guilty of murder in the second degree. *S. v. Adams,* 241 N.C. 559, 85 S.E. 2d 918; *S. v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322. Thereupon, it was incumbent upon defendant to satisfy the jury of the truth of facts which justi-

fied or mitigated the killing in accordance with legal principles too well settled to warrant reiteration.

Defendant relied upon, and testified in support of, his plea of self-defense; and, as the basis for his contention that the court erred in denying his motion for judgment of nonsuit, contends the State's evidence, as well as his own testimony, established that he acted in self-defense, citing *S. v. Tolbert,* 240 N.C. 445, 82 S.E. 2d 201, and cases cited therein.

It is noted that Edward Revis, defendant's brother, did not testify. According to defendant's testimony, Edward was in the living room, asleep and drunk, when the shooting occurred.

The State's evidence consisted, in part, of statements, written and oral, made by defendant to officers who investigated the killing. These statements, which tended to show defendant acted in self-defense after he had been violently assaulted by Wilson and was in imminent danger of further assault, are to the effect that the shooting occurred in defendant's bedroom, and that thereafter Wilson left the bedroom, went through the living room to the front porch, across the porch and down the steps at one end of the porch and fell near the foot of the porch steps. Suffice to say, other evidence for the State was sufficient to support a finding that Wilson, when shot, was outside of defendant's house, that is, near the foot of the porch steps.

In his testimony, defendant, for the first time, stated that the shooting occurred outside his house; that Wilson, after assaulting him, went out the back (kitchen) door; that defendant, when he had sufficiently recovered from the effects of the assault, locked the back door, got his rifle, walked through the living room to the porch, then across the porch to the steps leading to his driveway, all because he was fearful and wanted to flee from the premises, and that he fired the fatal shot from the porch at a time when Wilson, cursing and threatening to kill him, started up the porch steps to attack him. It is noteworthy that both defendant's car and Wilson's car were parked in defendant's driveway, which driveway extended along that side of defendant's house where said porch steps are located.

Defendant contends that his said statements, offered in evidence by the State, suffice to show that he acted in self-defense. But, in addition to evidence for the State of like import, defendant's testimony contradicts his said statements as to where the shooting occurred. "The State, by offering evidence of the declarations or admissions of a defendant, is not precluded from showing that the facts are other than as related by him." *S. v. Tolbert, supra.* Moreover,

where a defendant introduces evidence, the only motion for judgment of nonsuit for consideration on appeal is that made at the close of all the evidence. G.S. 15-173.

At trial, neither the State nor the defendant contended Wilson, when shot, was inside defendant's house. The State relied upon defendant's said statements to establish that defendant intentionally shot and killed Wilson; and evidence offered by the State and defendant's testimony contradict defendant's said statements as to the place and circumstances of the killing. The State contended defendant's said statements as to the place and circumstances of the killing were false and that such false statements made by defendant prior to trial tended to discredit the testimony of the defendant at trial as to the place and circumstances of the killing.

Defendant's motion for judgment of nonsuit was properly overruled.

Defendant excepted to and assigns as error numerous statements in the court's recital of evidence and of contentions, contending such statements were erroneous and misleading. Ordinarily, inaccurate statements of this character are not ground for a new trial unless called to the court's attention with request that correction be made before the case is submitted to the jury. *Morgan v. Bell Bakeries, Inc.,* 246 N.C. 429, 433, 98 S.E. 2d 464, and cases cited. Here, at the conclusion of the charge, defendant objected to the charge on the ground indicated but did not then point out the asserted misstatements now assigned as error.

"While an inaccurate statement of facts contained in the evidence should be called to the attention of the court during or at the conclusion of the charge in order that the error might be corrected, a statement of a material fact not shown in the evidence constitutes reversible error." *S. v. McCoy* 236 N.C. 121, 124, 71 S.E. 2d 921, and cases cited. Careful consideration of the evidence indicates the court, in certain of the statements now challenged, inadvertently erred in respect of what certain witnesses testified. Two such instances are noted below. However, we need not decide whether such erroneous statements, standing alone, were sufficiently prejudicial to warrant a new trial.

Defendant excepted to and assigns as error each of the two portions of the charge quoted below.

After reviewing defendant's testimony on direct examination, the court said: *"The defendant further says and contends that on his own cross-examination he offered evidence which tends to show. . ."*

(Our italics.) Thereupon, the court undertook to review testimony of defendant elicited by the State on cross-examination.

Near the end of the trial, when the State was offering rebuttal evidence, defendant was recalled by the State for further cross-examination. With reference to testimony then elicited by the State, the court, in part, said: *"The defendant further says and contends that he has offered his own testimony which tends to show* that he went out the back door and he locked the door of the kitchen, that is, that Wilson went out the back door; that he was at the foot of the steps when he was shot; that he himself was in the room — or on the porch and a light in the room was burning; that the shade was down, but that the shade was transparent and that the light from inside the room, in the center of the room, reflected through the window; that at the time he shot that rifle that he, himself, was beat up and that in his opinon he was standing in the light and that Wayne Wilson was in the dark except the light that shown through the shade on the window; that before he shot Wayne Wilson he told him not to come in the house any more; . . ." (Our italics.)

We find nothing in defendant's testimony to the effect that defendant was in any room when Wilson was shot. On the contrary, defendant's positive testimony is that he was on the porch, near the top of the porch steps, when he fired the fatal shot. Nor do we find that defendant testified that "in his opinion he was standing in the light and. . .Wayne Wilson was in the dark except the light that shown through the shade on the window" when the shot was fired.

The State, by said further cross-examination of defendant, was undertaking to elicit testimony that might lend support to the theory that defendant shot deceased "from that living room window there as he came walking to his automobile." Defendant denied categorically that he shot Wilson under such circumstances.

It is patent that the testimony of defendant on cross-examination and on further cross-examination was elicited by the State solely for the purpose of impeaching defendant and of discrediting the testimony defendant had given on direct examination, not to elicit testimony relevant to defendant's defense. The testimony so elicited by the State was neither offered by defendant nor did defendant base any contention thereon. The statement that this testimony was offered by defendant, with the implication that defendant relied thereon, was erroneous; and we are of opinion, and so hold, that this erroneous statement, in the circumstances here disclosed, tended

to confuse defendant's position and contentions to such extent as to entitle defendant to a new trial.

For the error indicated, a new trial is awarded. Hence, discussion of defendant's other assignments of error is unnecessary.

New trial.